UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLO VARTINELLI,                            Case No. 11-11376

        Plaintiff,                      Patrick J. Duggan
v.                                           United States District Judge

MILLICENT WARREN, *et al.*,                  Michael Hluchaniuk
                                             United States Magistrate Judge
        Defendants.
_____/

**REPORT AND RECOMMENDATION**
**MOTION FOR SUMMARY JUDGMENT (Dkt. 74)**

## I.  PROCEDURAL HISTORY

Plaintiff filed this prisoner civil rights action *pro se* on April 1, 2011.  (Dkt. 1).  This matter was previously referred to Magistrate Judge Mark Randon.  On August 12, 2012, Judge Randon issued a report, recommending summary judgment on some, but not all, of plaintiff's claims.  (Dkt. 40).  On November 19, 2012, District Judge Patrick J. Duggan adopted Judge Randon's recommendations in part, finding issues of fact on the following claims:

> The Court concurs that L. Nunnery and Patricia Barnhart should be dismissed from this action, due to Plaintiff's failure to provide an address to serve them. The Court also concurs with Magistrate Judge Randon's recommendation that Plaintiff's First Amendment claim based on the opening of mail from Mr. Accardo and his gross negligence claim should be dismissed.

As to Plaintiff's First Amendment claim based on the opening of his mail from Attorneys Cecil, Szabo, and Williston, Plaintiff fails to state a claim against Defendants Warren, Wolfenbarger, Scott, Rewerts, Corrigan, and Topham. The Court is denying summary judgment to Defendants Haywood, Bates, and McManus with respect to this claim. Plaintiff also fails to state a First Amendment retaliation claim against Defendants Scott, Wolfenbarger, McManus, Haywood, Bates, and Rewerts. The Court disagrees with the magistrate judge, however, as to the dismissal of Plaintiff's retaliatory transfer claim against Defendants Warren, Corrigan, and Topham. Plaintiff's claim based on his transfer in 2008 survives summary judgment as to Defendants Warren and Corrigan, and survives as to Defendants Warren, Corrigan, and Topham with respect to his transfer in 2010.

Finally, the Court concurs with Magistrate Judge Randon that Plaintiff's Eighth Amendment claim should be dismissed against Defendants McManus, Haywood, Bates, and Rewerts. Thus this claim survives summary judgment against Defendants Warren, Corrigan, Topham, Wolfenbarger, and Scott.

(Dkt. 46). Key holdings that affect the current motion for summary judgment from

Judge Duggan's opinion include the following:

With respect to Bates and Topham, there are no allegations in Plaintiff's pleadings or the evidence he has presented to suggest that they were involved in the decision or had a retaliatory motive to transfer Plaintiff from TCF to MCF in 2008. The Court does believe, however, that Plaintiff asserts allegations which, if accepted as true, raise a question of fact as to Topham's involvement in the 2010 transfer decision. Plaintiff alleges in his Amended Complaint that in March 2010, Topham specifically threatened to "get [him] on a bus"

before she retired and that two months later he learned he was being transferred again. (Am. Compl. ¶¶ 52, 53).

Magistrate Judge Randon nevertheless recommends dismissal of Plaintiff's retaliation claim based on his 2010 transfer, finding evidence that the transfer was based on a legitimate non-retaliatory reason, that being to accommodate TCF's bedspace and programming needs. (See R&R at 14.) With respect to this conclusion, the Court disagrees with Magistrate Judge Randon in that this Court believes Plaintiff should be allowed to engage in discovery to investigate this asserted rationale for the transfer and to determine whether it was a pretext for retaliation.

For these reasons, the Court is adopting Magistrate Judge Randon's recommendations with respect to Plaintiff's retaliation claim, except to the extent that he recommends summary judgment to Defendants with respect to the transfer of Plaintiff in 2010 and dismissal of Topham related to that transfer.

Next, Judge Duggan held:

[T]o state a § 1983 claim against these individuals, it is not enough for Plaintiff to simply allege that MDOC Policy Directives required tobacco-free housing for prisoners with medical conditions and that Defendants knew, by nature of their employment and training, that the directives were mandated. (See Pl.'s Obj. at 12- 13.) Defendants' liability cannot be premised on their failure to enforce MDOC policy or to respond in the face of another's unconstitutional behavior. "Liability will not lie absent active unconstitutional behavior; failure to act or passive behavior is insufficient." *King v. Zamiara*, 680 F.3d 686, 706 (6th Cir. 2012) (citations omitted).

(Dkt. 46).

Report and Recommendation
Motion for Summary Judgment
*Vartinelli v. Warren*; Case No. 11-11376

On December 14, 2012, plaintiff requested counsel. (Dkt. 48). On December 20, 2012, Judge Randon issued an amended scheduling order. (Dkt. 49). The request for counsel was granted on January 17, 2013, and a stay of proceedings entered. (Dkt. 52). On November 14, 2013, the remaining defendants filed a second motion for summary judgment. (Dkt. 74). Counsel was assigned on November 26, 2013. (Dkt. 79). On January 21, 2014, the stay was lifted and new dates set. (Dkt. 80). Plaintiff was permitted to send one set of interrogatories and plaintiff was given a deadline of March 14, 2014 to respond to the motion for summary judgment. (Dkt. 80). On March 14, 2014, plaintiff filed the response. (Dkt. 81). On March 20, 2014, plaintiff filed a motion to re-open discovery. (Dkt. 82). Defendants filed a reply to the motion for summary judgment on March 21, 2014. (Dkt. 83). On April 3, 2014, defendants filed a response to the motion to reopen discovery. (Dkt. 85). This matter was referred to the undersigned for all pretrial purposes on March 31, 2014. (Dkt. 84). A hearing was held on the motions on June 30, 2014. (Dkt. 87). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**.

## II.   FACTUAL BACKGROUND

An extensive factual background may be found in the previous Report and

Recommendation and Opinion and Order adopting that report, in part.  (Dkt. 40, 46).

## III.   ANALYSIS AND CONCLUSIONS

### A.   Standard of Review

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 282 (2012).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 578 (6th Cir. 2009), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th. Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1).  Once the movant establishes the lack of a

genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. Fed.R.Civ.P. 56(e)(2), (3); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009), quoting *Anderson*, 477 U.S. at 252; *see also Donald v. Sybra, Inc.*, 667 F.3d 757, 760-61 (6th Cir. 2012).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986),

quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984).  The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561, quoting 11 James William Moore, et. al. Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.3d at 1056.  Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

      B.    <u>Legal Mail</u>

      Defendants Haywood, Bates, and McManus, TCF mailroom employees, argue that plaintiff has not demonstrated that he was personally harmed by his legal mail being opened and did not establish that any defendant actually engaged in the mail opening.  Plaintiff claims that one of these three individuals, or all of them, opened his legal mail outside of his presence, despite his request for all incoming legal mail to be processed through the control center and in accordance with MDOC policy on legal mail.  (Dkt. 40, Pg ID 408).  According to defendants,

plaintiff alleges no prejudice to any pending lawsuit and therefore, his claim must fail.

According to plaintiff, his claim is not simply that defendants have interfered with his access to the courts, but that defendants have violated his constitutional First Amendment rights under 42 U.S.C. § 1983, which state that mere deprivation of a civil right by an individual acting under color of law is enough to establish injury. Plaintiff contends that it has been established that opening even "ordinary" mail in a manner that fails to conform to a uniform policy constitutes a violation of a prisoner's First Amendment rights. *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). Legal mail is subject to even greater protection, since the opening of such correspondence impacts not only the prisoner's access to the courts, but also the attorney-client privilege, as well as a prisoner's legal rights. *Id*. at 873-74. Legal mail addressed to a prisoner should not be opened outside of the presence of the intended recipient. *Id*. at 874.

Judge Randon previously addressed the defense of qualified immunity. (Dkt. 40). Judge Randon determined that the first two steps of the qualified immunity analysis were decided in plaintiff's favor. But, Judge Randon concluded that plaintiff was entitled to discovery on the third step, whether defendants' actions were objectively unreasonable in light of clearly established constitutional rights. (Dkt. 40). In his report and recommendation, Judge Randon determined

that plaintiff was entitled to discovery on a limited issue as it related to his legal

mail:

> The third step of the qualified immunity analysis is
> whether Plaintiff has offered sufficient evidence to
> indicate that the Defendants' Haywood, Bates, and
> McManus' actions were objectively unreasonable in light
> of the clearly established constitutional rights. *Sallier*,
> 343 F.2d at 879. This Magistrate Judge finds Plaintiff
> should be entitled to discovery on this limited issue.
> Plaintiff should be able to determine: (1)  whether it was
> a light duty officer, or Defendant Haywood, Bates, or
> McManus who opened Plaintiff's legal mail from
> Attorneys Cecil, Szabo, and Williston; and (2) how his
> legal mail was "mistakenly" opened three times, as
> Defendants claim.  (Dkt. No. 1; Ex. 22).

(Dkt. 40, Pg ID 410-411).  These conclusions appear to have been undisturbed by

Judge Duggan's opinion.  (Dkt. 46).  Neither party really addresses the legal mail

issue as framed by Judge Randon; that is, has plaintiff offered any evidence to

support the claim that defendants' actions were objectively unreasonable.  The

discovery responses attached by plaintiff to his response to the motion for

summary judgment also do not address this issue at all.  The complete responses to

plaintiff's discovery requests are attached to defendants' reply brief.  (Dkt. 83).

However, nothing in the questions or responses focus on this issue.  Given the

narrow scope of the remaining issue on legal mail as described by Judge Randon,

it is readily apparent that plaintiff has not offered any evidence suggesting that the

actions of these three defendants were objectively unreasonable.  Thus, summary

judgment should be granted in their favor.

C.     Retaliatory Transfers

Judge Randon concluded that defendants established that they would have transferred plaintiff anyway, in the absence of protected activity, and thus, they should prevail on summary judgment. (Dkt. 40). Judge Duggan disagreed and determined that plaintiff should be permitted to conduct discovery on the asserted rationale to determine whether it was a pretext for retaliation. (Dkt. 46). Thus, two claims of retaliation remain in this lawsuit. First is a claim of a retaliatory transfer involving defendants Warren and Corrigan in January 2008. Plaintiff claims that both defendants transferred him to the Macomb Correctional Facility (MRF) in retaliation for various complaints and grievances filed. Second is a claim of retaliation against defendants Warren, Corrigan and Topham for a transfer that occurred in June 2010 from TCF to SRF, which is the Saginaw Correctional Facility. (Dkt. 46, Pg ID 487-88) (*see also* Ex. H, Cell Transfer History). According to defendants, plaintiff has failed to establish that either transfer constituted an adverse action or that there is causation between plaintiff's grievance writing activity or general complaints regarding his conditions of confinement and the transfers themselves. As to the 2008 transfer, plaintiff admitted in his deposition that MRF was not a higher security level prison than what he had experienced while housed at TCF, and that plaintiff did not endure

any more restrictions to his freedom or ability to engage in First Amendment

activity than he had at TCF.  Plaintiff stated, when asked about his current security

level, "I've been a level two for – since 2000 --- no 1998." (Dkt. 74, Ex. A, p. 46).

Defendants also claim that plaintiff failed to establish causation.

Defendants point to Warren's affidavit, which explains that in order for a transfer

to be approved at the facility level, a medical evaluation is performed and the

transfer is only completed if the receiving facility can medically accommodate the

transfer.  (Dkt. 74, Ex. G).  In this case, plaintiff was medically cleared to transfer

on both occasions in question by healthcare staff.  (Dkt. 74, Ex. F, pp. 1-5, 33-35).

Therefore, defendants argue that plaintiff may not argue that any of the defendants

knew that a transfer to MRF or to SRF would adversely affect his health.

According to plaintiff, defendants fail to address plaintiff's allegation that

MRF was a facility where there was significant amounts of tobacco smoke in the

housing areas.  Furthermore, MRF did not have the same accommodations for the

prevention of tobacco smoke in the housing areas of the facilities as TCF.  At

TCF, there were "tobacco-free housing units," whereas at MRF, only certain wings

of the housing units were designated as being "tobacco-free."  (Dkt. 27, Pl's.

Amended Compl. at 15).  As an individual suffering from asthma and serious

smoke allergies, plaintiff contends that one would almost certainly be deterred by

a transfer to a facility where one would be exposed to significant amounts of

secondhand smoke.  Indeed, after being transferred to MRF, plaintiff was
hospitalized following an asthma attack.  *Id*.

Plaintiff says nothing in his response to the motion for summary judgment
about excessive smoke at SRF.  In addition, plaintiff was given the opportunity to
conduct discovery to investigate the asserted rationale for this transfer (to
accommodate TCF's bed space and programming needs) in order to determine
whether this asserted rationale was a pretext for retaliation.  (Dkt. 46).  Plaintiff
has offered no further evidence in on this issue.  In the view of the undersigned,
plaintiff offers no evidence or even any argument of any adverse consequences
that would take the transfer from TCF to SRF out of the realm of ordinary prisoner
transfer to another prison of the same security level, which has been repeatedly
found not to constitute sufficient retaliation to support a First Amendment claim.
*See Jewell v. Leroux*, 20 Fed.Appx. 375 (6th Cir. 2001) (A transfer to the general
population of another prison is not considered sufficiently adverse.); *Friedman v.
Corr. Corp. of Am.*, 11 Fed.Appx. 467, 471 (6th Cir. 2001) ("It seems clear,
however, that a mere transfer to another institution of the same security level, with
no other aggravating factors, is not sufficiently adverse to deter a person of
ordinary firmness from engaging in the exercise of protected First Amendment
activity."); *Goddard v. Ky. Dep't of Corr.*, 2000 WL 191758 (6th Cir. 2000) (The
transfer of an inmate to the general population of another prison is not considered

sufficiently adverse.).

As to the transfer to MRF, plaintiff offers nothing to rebut the evidence that
he received a health clearance to be transferred to that facility.  As observed in
*Jones v. Caruso*, 421 Fed.Appx. 550 (6th Cir. 2011), where the prison officials
who transferred a prisoner to another facility could not have foreseen allegedly
negative consequences of transfer, in that the new facility allegedly had worse
conditions for exposure to environmental tobacco smoke (ETS), the transfer was
not retaliation in violation of the First Amendment, given that prison officials did
not have any basis believe that the prisoner would be unable to be housed in
smoke or tobacco-free housing.  Here, plaintiff has offered no evidence that
defendants had such knowledge, nor disputed their evidence that plaintiff's
medical history could be accommodated at the transfer facility.  Thus, in the view
of the undersigned, plaintiff's retaliation claim must fail.

D.    Deliberate Indifference

Defendants first argue that "most" of plaintiff's allegations regarding ETS
occurred outside the 3 year statute of limitations period, given that he filed his
complaint on April 1, 2011, and any claims prior to April 1, 2008 are barred.
According to defendants, plaintiff was moved into tobacco free housing at TCF on
October 4, 2006.  Defendants argue it was not reasonable to file his lawsuit for
ETS exposure in 2006 until 2011 and these claims are barred by the statute of

limitations.

Defendant also contends that plaintiff has failed to establish a claim for ETS exposure (either present or future) under the Eighth Amendment. As to the future injury claim, defendants argue that plaintiff has failed to show that he has been exposed to unreasonably high levels of ETS and the law does not require an ETS-free environment. Defendants also argue that plaintiff has no evidence to support the objective prong of his present-injury ETS claim, in that plaintiff also failed to come forward with sufficient evidence in support of the objective prong of his present-injury ETS claim. Mere exposure to ETS, "without more, does not constitute a deprivation of a prisoner's Eighth Amendment rights." *Hunt v. Reynolds,* 974 F.2d 734, 735 (6th Cir. 1992). The issue with respect to the objective component is whether a prisoner's "pre-existing medical conditions are such that exposing [him] to ETS represents a serious health threat or constitutes mere discomfort." *Id.* According to defendants, plaintiff's records reveal that following his transfer from TCF to MRF in January 2008, plaintiff complained only one time to medical staff about having problems that he attributed to exposure to second hand smoke. (Dkt. 74, Ex. F, pg. 9). Further, defendants contend that most of plaintiff's other ailments appear to be allergy related or related to other health conditions. Examinations of plaintiff's lungs and breathing revealed normal results. (Dkt. 74, Ex. F, pp. 9, 13, 15, 16, 22, 28). Defendants do

not dispute that plaintiff is an individual with many health problems.  However, they maintain that he cannot definitively demonstrate that his health problems worsened as a result of exposure to second hand smoke and not due to a number of other factors such as obesity, hypertension, diabetes, etc., all of which plaintiff suffers from.  (Dkt. 74, Ex. F).

As to the subjective component of a deliberate indifference claim, defendants argue that a reasonable response to ETS is to adopt a no-smoking policy.  The MDOC has a no-smoking policy.  Prior to February 1, 2009, the policy allowed prisoners to possess tobacco products, but prohibited smoking in buildings.  The current policy not only bans smoking, but it forbids all tobacco products in the prisons.  The adoption of a no-smoking policy "will bear heavily on the inquiry into deliberate indifference." *Helling*, 509 U.S. at 36.  Although defendants acknowledge that they may not have been able to achieve perfect enforcement, they argue that the "mere imperfect enforcement of a no-smoking policy does not rise to the level of deliberate indifference when prison officials make good faith efforts to enforce the policy." *Talal v. White*, 403 F.3d 423, 427 (6th Cir. 2005).  According to defendants, there is no evidence that they deliberately refused to enforce the smoking ban.  Katherine Corrigan explained in her previous affidavit that, pursuant to Department policy, the MDOC widespread tobacco free policy is enforced.  (Dkt. 29, Ex. 2 ¶ 4).  Further, defendants point out

Report and Recommendation
Motion for Summary Judgment
*Vartinelli v. Warren*; Case No. 11-11376

that plaintiff's amended complaint makes no specific allegation that defendant
Scott or Topham were deliberately indifferent to his medical need for tobacco free
housing or otherwise subjected him unnecessarily to a tobacco infested
environment.

In response to defendants' statute of limitations argument, plaintiff points
out that the statute of limitations is an affirmative defense under Fed R. Civ. P.
8(c), and should have been asserted in a responsive pleading.  According to
plaintiff, defendants failed to do so and this failure results in a waiver of any
statute of limitations defense.  Plaintiff does not address the substance of the
statute of limitations claim

Next, plaintiff points out that he has been diagnosed with asthma and
chronic obstructive pulmonary disease.  (Dkt. 27, Pl.'s Amended Compl., Ex. 29,
30).  He contends that one need not be a physician to know that, according to
well-documented medical evidence compiled over the last few decades, exposure
to tobacco smoke places him at risk of exacerbating these conditions.  Plaintiff
contends that it is unreasonable to expect that every incarcerated prisoner, who has
access to specialized medical testing only at the sufferance of his jailors or his own
expense, should be so fortunate as to be able to obtain "scientific evidence" as to
the level of secondhand tobacco smoke in his environment.  It is plaintiff's
position that his allegations that smoking continued to be a problem after the

MDOC's ban, as well as the observations of other prisoners, rise to the level of creating a material factual dispute on whether there is a threat of future injury to plaintiff.

As to defendants' subjective indifference to plaintiff's serious medical needs, plaintiff contends that none of the defendants, of whom many were aware of plaintiff's condition, made an effort to curtail the incidence of smoking in the housing areas or protect plaintiff from the negative impact of the secondhand smoke. Plaintiff says he complained to defendants Warren, Scott, Corrigan, Topham, and Wolfenbarger about his medical conditions, seemingly to no avail. (Dkt. 27, Pl.'s Am Compl at 15, 17, 20). Furthermore, plaintiff asserts that all of these defendants were aware of that at least some level of smoking occurred in the housing areas. (Pl.'s Ex. D). Thus, plaintiff maintains that there are sufficient factual allegations and evidence to create a material factual dispute as to the indifference of defendants Warren, Corrigan, Topham, Wolfenbarger, and Scott to plaintiff's serious medical needs.

In the earlier report and recommendation, Judge Randon found that plaintiff satisfied the objective prong of the deliberate indifference test, and Judge Duggan does not appear to have disturbed this finding. Thus, in the view of the undersigned, it does not seem that this issue should or can be revisited based on the law of the case doctrine. The law of the case doctrine provides that "when a

court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004), quoting *Arizona v. California*, 460 U.S. 605, 618 (1983). The doctrine precludes a court from reconsideration of issues "decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition." *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997), quoting *Coal Res., Inc. v. Gulf & Western Indus., Inc.*, 865 F.2d 761, 766 (6th Cir. 1989). The law of the case doctrine precludes reconsideration of a previously decided issue unless one of three "exceptional circumstances" exists: (1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice. *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006). None of these circumstances is present here. Thus, the law of the case bars reconsideration of the finding that the objective prong was satisfied.

As to the subjective prong, Judge Randon concluded that plaintiff should be able to obtain discovery on the following issues:

> This Magistrate Judge finds Plaintiff should be entitled to discovery to determine: (1) whether prisoners purchased tobacco products after the MDOC was tobacco free; (2) whether prisoners and/or officers smoked in no-smoking areas before the smoking ban;

and (3) how prisoners who were caught violating the
no-smoking rules were disciplined (e.g., how many
misconduct tickets were issued, were those prisoners
removed from non-smoking areas, and were grievances
responded to).

(Dkt. 40, Pg ID 421-22).  While these conclusions were not disturbed in Judge

Duggan's opinion, it also seems readily apparent that plaintiff's entire argument is

based solely on what Judge Duggan found to be inadequate – that defendants did

not sufficiently enforce the no-smoking ban.  Plaintiff has not offered any

evidence to suggest that his claim is based on anything other than an alleged

failure to enforce the smoking ban policy.  Thus, plaintiff's claim fails on the

subjective prong of the deliberate indifference test.

As to the statute of limitations issue, defendants raised this defense in their

waiver of answer.  (Dkt. 60).  In the view of the undersigned, the substance of the

statute of limitations defense need not be addressed, given the foregoing

conclusion that plaintiff's deliberate indifference claim fails on the merits.

E.    Motion to Reopen Discovery (Dkt. 82)

Plaintiff also moves to reopen discovery.  (Dkt. 82).  However, plaintiff did

not explain what discovery is required with any specificity.  The undersigned will

treat this motion as one seeking relief under Rule 56(d).  A party seeking

discovery under Rule 56(d) must support that request with an affidavit

demonstrating the need for the discovery.  *Plott v. General Motors Corp.*, 71 F.3d

1190, 1196 (6th Cir. 1995).  "[A] request to stay summary judgment under [Rule 56(d)] must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'"  *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010).  Bare allegations or vague assertions of need without supporting proof are insufficient.  *See Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 409 (6th Cir. 1998).  A party requesting additional discovery must demonstrate "its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information."  *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 488-89 (6th Cir. 2000).  A motion under Rule 56(d) may be properly denied when the requesting party "makes only general and conclusory statements . . . regarding the need for more discovery and does not show how an extension of time would have allowed information related to the truth or falsity of the [document] to be discovered."  *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004).

In this case, plaintiff was given a clear road map in the Report and Recommendation and subsequent Opinion and Order regarding what evidence was necessary in order to overcome summary judgment on the remaining narrow issues and claims.  Plaintiff did not come forward with that evidence and has not provided any specific explanation regarding what additional discovery is

necessary to accomplish that.  Moreover, plaintiff's request is not supported by an affidavit.  For these reasons, the undersigned sees no basis to delay entry of summary judgment in defendants' favor based on plaintiff's motion to reopen discovery.[1]

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

---

[1]  This motion will be denied via separate order.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"
etc.  Any objection must recite precisely the provision of this Report and
Recommendation to which it pertains.  Not later than 14 days after service of an
objection, the opposing party may file a concise response proportionate to the
objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).
The response must specifically address each issue raised in the objections, in the
same order, and labeled as "Response to Objection No. 1," "Response to Objection
No. 2," etc.  If the Court determines that any objections are without merit, it may
rule without awaiting the response.

Date:  July 28, 2014                         s/Michael Hluchaniuk
                                             Michael Hluchaniuk
                                             United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on July 28, 2014, I electronically filed the foregoing paper with
the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Mario Bechara Azzi, Cori E. Barkman.

                                             s/Tammy Hallwood
                                             Case Manager
                                             (810) 341-7887
                                             tammy_hallwood@mied.uscourts.gov