UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CARLO VARTINELLI,

            Plaintiff,                           Civil Action No.
                                                11-CV-11376
v.

                                             Honorable Patrick J. Duggan
MILLICENT WARREN, et al.,

            Defendants.
_____/

## OPINION AND ORDER (1) ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, (2) SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, and (3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION AND PROCEDURAL HISTORY

On April 1, 2011, Plaintiff Carlo Vartinelli, a Michigan Department of Corrections (MDOC) prisoner with asthma and chronic lung disease, filed this lawsuit against numerous MDOC employees pursuant to 42 U.S.C. § 1983. Plaintiff filed an amended complaint on November 23, 2011.  The case has been referred to the Magistrate Judge for all pretrial proceedings.[1]

_____

[1] The case was originally referred to then-Magistrate Judge Mark A. Randon.  On March 27, 2014, the case was reassigned to Magistrate Judge Michael Hluchaniuk.

Defendants filed a motion for summary judgment on January 9, 2012, prior to the commencement of discovery. On November 19, 2012, the Court issued an Opinion and Order granting in part and denying in part the motion.[2] The following claims survived the motion:

(1) Plaintiff's claim that Defendants Peggy Haywood, Tonica Bates, and Robbin McManus violated his First Amendment rights by opening his legal mail outside his presence while imprisoned at Thumb Correctional Facility (TCF);

(2) Plaintiff's claim that Defendants Millicent Warren and Katherine Corrigan transferred him from TCF to Macomb Correctional Facility (MRF) in 2008 in retaliation for filing grievances concerning his legal mail being opened outside his presence;

(3) Plaintiff's claim that Defendants Millicent Warren, Katherine Corrigan, and Margaret Topham transferred him from TCF to Saginaw Correctional Facility (SRF) in 2010 in retaliation for complaining about the conditions of his confinement;

(4) Plaintiff's claim that Defendants Millicent Warren, Katherine Corrigan, Margaret Topham, Hugh Wolfenbarger, and Joe Scott were deliberately indifferent to his serious medical needs by causing Plaintiff to be exposed to second-hand tobacco smoke in violation of his Eighth Amendment rights.

As to these surviving claims, the Court determined that Plaintiff should be allowed to engage in discovery to uncover facts relevant to each claim.

On November 14, 2013, following the close of discovery, Defendants filed a "renewed" motion for summary judgment, and on March 20, 2014, Plaintiff filed a

---

[2] In doing so, the Court adopted in part and rejected in part the Report and Recommendation of then-Magistrate Judge Randon, which was issued on August 28, 2012.

motion to re-open discovery.  On June 30, 2014, Magistrate Judge Hluchaniuk held a telephonic hearing on both motions.  In a Report and Recommendation (R&R) issued on July 28, 2014, Magistrate Judge Hluchaniuk recommends that Defendants' renewed motion for summary judgment be granted in its entirety.  By separate order dated July 31, 2014, the Magistrate Judge denied Plaintiff's motion to re-open discovery for reasons stated in the July 28 R&R.

On August 5, 2014, Plaintiff filed objections to both rulings, and Defendants filed a response on August 19, 2014.  With regard to Magistrate Judge Hluchaniuk's recommended ruling on the renewed motion for summary judgment, the Court reviews *de novo* those portions of the R&R to which a specific objection has been made.  Fed. R. Civ. P. 72(b).  With regard to the Magistrate Judge's ruling on the non-dispositive motion, the Court has authority to modify or set aside the Magistrate Judge's order only to the extent it is "clearly erroneous" or "contrary to law."  Fed. R. Civ. P. 72(a).

## II.  ANALYSIS

In his objections, Plaintiff argues that Magistrate Judge Hluchaniuk erroneously recommended that summary judgment be granted in favor of Defendants with regard to each of the remaining claims in this case.

### A.  First Amendment Claim

3

Plaintiff alleges that Defendants Haywood, Bates, and McManus, all mailroom employees at TCF at the time, violated his First Amendment rights by opening his legal mail outside his presence on several occasions.[3]  In the present motion for summary judgment, Defendants cast Plaintiff's claim as an access-to-courts claim and contend that it fails because Plaintiff has not presented evidence of any harm stemming from the unauthorized opening of his legal mail.  In support of their argument, Defendants rely on *Lewis v. Grider*, 27 F. App'x 282 (6th Cir. 2001) (to state an access-to-courts claim, prisoner must show "prejudice to pending litigation"), and *Lewis v. Cook County Board of Commissioners*, 6 F. App'x 428 (7th Cir. 2001) (to state a viable access-to-courts claim, prisoner must show that "a . . . legal case or claim . . . . was . . . thwarted because the mail room staff opened his legal mail").

In response, Plaintiff states that he is asserting more than an access-to-courts claim; he is also asserting a claim that Defendants Haywood, Bates, and McManus violated his First Amendment rights pursuant to 42 U.S.C. § 1983 – a claim that does not require Plaintiff to show that any harm resulted from Defendants' actions. Plaintiff relies on *Sallier v. Brooks*, 343 F.3d 868 (6th Cir. 2003) in support of  his argument.  In that case, which involved a First Amendment claim brought under § 1983, the Sixth Circuit affirmed the jury's verdict in favor of a prisoner whose

---

[3] In this section of the Court's Opinion, the word "Defendants" refers only to Defendants Haywood, Bates, and McManus.

legal mail was opened outside his presence despite the prisoner's demand that he be present if prison officials decide to open his legal mail:

> [T]he prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process and, therefore, . . . as a matter of law, mail from an attorney implicates a prisoner's protected legal mail rights. There is no penological interest or security concern that justifies opening such mail outside of the prisoner's presence when the prisoner has specifically requested otherwise.

*Sallier*, 343 F.3d at 877-878 (citation omitted).

In their reply brief, Defendants appear to abandon their lack-of-harm argument. Instead, Defendants change course and argue for the first time that Plaintiff's legal mail was opened inadvertently, if at all, and that the negligent opening of a prisoner's legal mail does not result in a viable claim under § 1983. In support, Defendants rely on *Horacek v. Seaman*, No. 08-CV-10866, 2013 WL 5291440, at *9 (E.D. Mich. Sept. 19, 2013) (unpublished) (collecting cases standing for the proposition "that merely negligent opening of legal mail does not state a § 1983 claim.").

The Court rejects the argument that Plaintiff must show harm resulting from the opening of his legal mail outside his presence. Notably, *Lewis v. Grider* did not involve a First Amendment claim and, while *Lewis v. Cook County Board of Commissioners* involved both an access-to-courts and a First Amendment claim, the court only required a harm showing for the former claim. With respect to

5

claims that a prison official opened an inmate's legal mail outside the inmate's presence, case law distinguishes between access-to-court claims and claims brought under the First Amendment. *See, e.g.*, *Kinard v. Bakos*, 566 F. App'x 102, 104 (3d Cir. 2014) (analyzing the two claims separately); *Cook County Board of Commissioners*, 6 F. App'x at 430 (same). While Defendants are correct that prisoners asserting access-to-court claims must demonstrate harm resulting from the unauthorized opening of the prisoner's legal mail, prisoners alleging that their First Amendment rights were violated when their legal mail was repeatedly opened outside their presence need not show resulting harm. *See Schreane v. Holt*, 482 F. App'x 674, 676-677 (3d Cir. 2012) ("Prisoners may establish a violation of the First Amendment without establishing an actual injury where there is a pattern and practice of opening properly marked incoming legal mail outside the prisoner's presence."). Here, Plaintiff attests in an affidavit that his legal mail was opened outside his presence on an ongoing basis (i.e., on more than five occasions). Pl. Aff. ¶¶ 10, 15 (ECF No. 36-1 Page ID 366-367). If the jury credits Plaintiff's testimony, it could reasonably conclude that Defendants' actions in opening Plaintiff's legal mail outside his presence amounted to a "pattern and practice," thus eliminating the need for Plaintiff to show resulting harm.

The Court also rejects Defendants' argument that they are entitled to summary judgment because they opened Plaintiff's legal mail inadvertently, if at

all.  Although this argument could have been raised in Defendants' initial summary judgment brief submitted on November 14, 2013, it was not asserted until Defendants filed their reply brief on March 21, 2014.  By failing to raise the issue earlier, Defendants deprived Plaintiff of the opportunity to address the argument in his response brief.  Thus, the Court declines to consider the argument.  *See Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief – they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.  Further, the non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument.  As a matter of litigation fairness and procedure, then, we must treat this argument as waived.") (emphasis in original).

However, even if the Court were inclined to consider Defendants' inadvertence argument, it would reject it on the merits.  As mentioned, Plaintiff attested that his legal mail was opened outside his presence no less than five times.  Defendants do not deny that Plaintiff's legal mail was repeatedly opened.  Although Defendants Haywood, Bates, and McManus all stated under oath in response to interrogatories that they have never deliberately opened an inmate's legal mail, taking the evidence in the light most favorable to Plaintiff, the non-

7

moving party, a reasonable jury could discredit Defendants' assertion that Plaintiff's legal mail was opened by mistake in light of the excessive number of times Plaintiff's legal mail was allegedly opened outside his presence.[4]

The Magistrate Judge concluded that Defendants are entitled to summary judgment on this claim because Plaintiff failed to offer evidence regarding the third element of the qualified immunity analysis, which requires Plaintiff to show that the actions of Defendants Haywood, Bates, and McManus were objectively unreasonable in light of clearly established law. *See Sallier v. Brooks*, 343 F.3d 868, 878 (6th Cir. 2003). However, the parties did not focus on qualified immunity in the present round of briefing, which may be why Plaintiff did not explicitly discuss the objective reasonableness of Defendants' actions in his response brief. In any event, taking the evidence in the light most favorable to Plaintiff, the Court concludes that the actions of Defendants Haywood, Bates, and McManus in opening Plaintiff's legal mail repeatedly outside Plaintiff's presence,

---

[4] Defendant Haywood stated in response to an interrogatory that she never witnessed, and does not have personal knowledge of, an instance in which a prisoner's confidential correspondence was deliberately opened in violation of MDOC policy. Interrog. 14 (ECF No. 83-4 Page ID 840). Defendant Bates stated in response to an interrogatory: "I have never viewed an inmate's legal mail deliberately opened in violation of MDOC policy, although I do believe that this has happened inadvertently on a few occasions." Interrog. 14 (ECF No. 83-2 Page ID 814). And Defendant McManus stated in response to an interrogatory: "I have never viewed an inmate's legal mail or deliberately opened the mail in violation of MDOC policy, although I do believe that legal mail of inmates has been opened inadvertently on a few occasions." Interrog. 14 (ECF No. 83-3 Page ID 827).

if believed by the jury, were not objectively reasonable in light of clearly established law.  *Id.* at 877 (prison officials may not open legal mail outside prisoner's presence when the prisoner has specifically requested otherwise). Therefore, Defendants Haywood, Bates, and McManus are not entitled to qualified immunity with regard to Plaintiff's First Amendment claim under § 1983.[5]

For all these reasons, the Court will deny summary judgment in favor of Defendants Haywood, Bates, and McManus on Plaintiff's First Amendment claim under § 1983.  Because Magistrate Judge Hluchaniuk reached a contrary result, the Court rejects that conclusion and sustains Plaintiff's first objection.

## B.  Retaliatory Transfer Claims

Plaintiff alleges that he was transferred twice, once in 2008 and again in 2010, in retaliation for engaging in protected activity – namely, voicing complaints and filing various grievances concerning the conditions of his confinement.  The remaining Defendants with regard to the 2008 retaliatory transfer claim are Millicent Warren, then-warden of TCF, and Katherine Corrigan, then-assistant deputy warden at TCF; the same two Defendants remain with regard to the 2010

---

[5]  The Court, adopting then-Magistrate Judge Randon's recommendation, previously concluded that Plaintiff satisfied his burden with respect to the other two elements of the qualified immunity framework.  In light of the Court's conclusion today regarding the third element, the Court now concludes that Defendants Haywood, Bates, and McManus are not entitled to qualified immunity with regard to Plaintiff's First Amendment claim under § 1983.

retaliatory transfer claim, plus Margaret Topham, who was Defendant Warren's administrative assistant at the time.

Regarding the 2008 transfer, the Court previously concluded that the claim should survive summary judgment and that Plaintiff should be entitled to discovery to uncover facts pertinent to the claim. Specifically, the Court noted that two facts supported a retaliatory motive with regard to the 2008 transfer: temporal proximity (specifically, the fact that the transfer occurred only thirty-three days after Plaintiff engaged in protected activity) and an officer's pre-transfer statement to Plaintiff that "he w[ould] suffer retaliation." In light of this evidence, the Court determined that

> Plaintiff should be allowed [discovery] to determine: (1) what role, if any, Defendants Warren and Corrigan played in the decision to transfer him from TCF to MCF; (2) whether Defendants Warren and Corrigan knew about the transfer before it occurred; (3) why Plaintiff was transferred back to TCF on March 10, 2009, and who made the decision to transfer him back; (4) the identity of the unknown officer who made the retaliation comment in 2005; and (5) whether the unknown officer's comment; or Plaintiff's grievances about the opening of his legal mail played any role in the decision to transfer Plaintiff to MCF.

Aug. 28, 2012 R&R at 12-13 (ECF No. 40 Page ID 413-414).

In their renewed summary judgment motion, Defendants Warren and Corrigan argue that the transfer from TCF to MRF does not constitute an adverse action because the conditions at MRF and TCF are materially similar and Plaintiff's freedoms were not affected as a result of the transfer. Plaintiff argues

10

that his health was adversely affected as a result of the transfer because TCF has tobacco-free housing units while MRF has only tobacco-free wings, resulting in substantially more tobacco smoke in the air at MRF than at TCF. Plaintiff contends that the transfer was an adverse action for someone like him who has severe smoke allergies and asthma, and that Defendants Warren and Corrigan purposefully caused him to be transferred to a smokier prison in retaliation for his protected conduct.

Defendants Warren and Corrigan also argue that they are entitled to summary judgment with regard to Plaintiff's claim that the 2008 transfer was retaliatory because Plaintiff failed to show a causal connection between his protected conduct and the transfer. Defendants point out that a medical evaluation of Plaintiff was completed prior to the transfer and a determination was made by a healthcare professional that Plaintiff could be medically accommodated at MRF. In light of the medical evaluation, Defendants argue that Plaintiff cannot show that Defendants knew that the transfer to MRF would adversely affect Plaintiff's health, thus undercutting Plaintiff's position that Defendants acted with a retaliatory motive.

In his R&R, Magistrate Judge Hluchaniuk accepted Defendants' causation argument, concluding that Plaintiff failed to present evidence that Defendants Warren and Corrigan had knowledge that Plaintiff would suffer negative

11

consequences as a result of the transfer to MRF, especially in light of the pre-transfer determination made by a healthcare official that MRF could accommodate Plaintiff's medical needs.  Plaintiff has not objected to this conclusion or the reasoning supporting it.  The Court will therefore grant summary judgment in favor of Defendants Warren and Corrigan on Plaintiff's claim that the 2008 transfer was retaliatory.

With regard to the 2010 transfer from TCF to SRF, the Court previously held, in light of Defendant Topham's purported threat to Plaintiff approximately three months before the transfer that she would "get [him] on a bus" (i.e., transfer him) before she retired, Plaintiff should be permitted an opportunity to engage in discovery to investigate the legitimate, non-retaliatory reason given by Defendants for Plaintiff's transfer to SRF, that being to accommodate TCF's bed space and programming needs.

In their renewed summary judgment motion, Defendants Warren, Corrigan, and Topham argue that summary judgment should be granted in their favor because, like in the case of the 2008 transfer, Plaintiff did not suffer an adverse action and Plaintiff failed to demonstrate a causal connection between his protected conduct and the subsequent transfer.

In his R&R, Magistrate Judge Hluchaniuk accepted both of Defendants' arguments and recommends that the Court grant summary judgment in their favor:

12

> Plaintiff says nothing in his response to the motion for summary
> judgment about excessive smoke at SRF. In addition, plaintiff was
> given the opportunity to conduct discovery to investigate the asserted
> rationale for this transfer (to accommodate TCF's bed space and
> programming needs) in order to determine whether this asserted
> rationale was a pretext for retaliation. (Dkt. 46). Plaintiff has offered
> no further evidence . . . on this issue. In the view of the undersigned,
> plaintiff offers no evidence or even any argument of any adverse
> consequences that would take the transfer from TCF to SRF out of the
> realm of ordinary prisoner transfer to another prison of the same
> security level, which has been repeatedly found not to constitute
> sufficient retaliation to support a First Amendment claim.

July 28, 2014 R&R at 12 (ECF No. 90 Page ID 962).

The only aspect of the Magistrate Judge's ruling to which Plaintiff objects is the Magistrate Judge's statement that Plaintiff was given an opportunity to conduct discovery on whether the rationale for the transfer was pretextual. Plaintiff contends that his ability to conduct discovery as an incarcerated prisoner was "severely limited" and that, since being appointed counsel, "Plaintiff's permitted discovery efforts remained curtailed." Objections at 2 (ECF No. 91 Page ID 974).

The record reflects that Plaintiff was allowed to send – and did send – twenty interrogatories to *each* of the eight remaining Defendants in this case, for a total of 160 interrogatories directed at Defendants. In his objections and in his separate motion to re-open discovery, Plaintiff fails to explain (1) why he believes his ability to conduct discovery has been curtailed; (2) why he believes twenty interrogatories for each of the eight remaining Defendants was inadequate; (3) what other discovery devices he hoped to utilize, if any; or (4) what facts he

13

believes could have been revealed through additional interrogatories or through the use of different discovery devices that could not have been revealed through the twenty interrogatories that he sent to each of the remaining eight Defendants. While Plaintiff complains that he was not afforded a sufficient opportunity to conduct discovery on whether the asserted rationale for the transfer was pretextual, Plaintiff failed in his interrogatories to ask Defendants Warren, Corrigan, and Topham about their motivation for transferring Plaintiff to SRF. Thus, the Court rejects Plaintiff's argument that he is entitled to additional discovery on this topic. And for the same reasons, the Court overrules Plaintiff's fourth and fifth objections, both of which focus on Plaintiff's position that he should be allowed to engage in additional discovery. Plaintiff has not shown that Magistrate Judge Hluchaniuk's ruling on Plaintiff's motion to re-open discovery was clearly erroneous or contrary to law.

Moreover, even if Plaintiff were entitled to additional discovery probing the asserted motivation for the 2010 transfer, and even if that discovery revealed a retaliatory motivation, Plaintiff still could not succeed on his retaliation claim because he failed to object to an independently sufficient reason given by Magistrate Judge Hluchaniuk for granting summary judgment in favor of Defendants Warren, Corrigan, and Tapham – that being the Magistrate Judge's conclusion that Plaintiff "offer[ed] no evidence or even any argument of any

adverse consequences that would take the transfer from TCF to SRF out of the realm of ordinary prisoner transfer to another prison of the same security level."

For these reasons, the Court will overrule Plaintiff's second, fourth, and fifth objections and grant summary judgment in favor of Defendants Warren, Corrigan, and Topham on Plaintiff's 2010 retaliatory transfer claim.

### C.  Eighth Amendment Claim

Plaintiff alleges that Defendants Warren, Corrigan, Topham, all MDOC employees at TCF, along with Defendants William Wolfenbarger and Joe Scott, the then-warden of MRF and then-assistant deputy warden of custody at MRF, respectively, were deliberately indifferent to Plaintiff's serious medical needs by causing Plaintiff to be exposed to excessive amounts of second-hand tobacco smoke.   While Plaintiff discusses in his amended complaint problems that he encountered with second-hand smoke at MDOC facilities as early as 2002, *see* Am. Compl. ¶ 20 (ECF No. 27 at Page ID 185), the focus of Plaintiff's Eighth Amendment claim seems to be the second-hand smoke to which he was exposed while housed at MRF from January 31, 2008 until March 10, 2009.[6]

_____

[6] Plaintiff's amended complaint, which was filed before the Court appointed counsel for Plaintiff, is quite disorganized, making it difficult to ascertain the exact nature and scope of Plaintiff's claims.   Although Plaintiff references smoke exposure while housed at Brooks Correctional Facility beginning in 2002 through 2005 and at TCF beginning in 2005 until he was transferred to MRF in 2008, under the heading "Plaintiff's Claims As To The Involuntary Exposure To Second-Hand

In any event, to the extent Plaintiff seeks relief for second-hand smoke exposure occurring prior to his transfer to MRF, as Defendants correctly point out, the statute of limitations governing Plaintiff's Eighth Amendment deliberate indifference claim is three years, *Cornelius v. Michigan Attorney Grievance Commission*, 510 F. App'x 404, 406 (6th Cir. 2013), and Plaintiff did not file the present lawsuit until April 1, 2011.  Thus, to the extent Plaintiff complains of second-hand smoke exposure occurring before April 2008, the claim is time-barred.

Plaintiff asserts just one argument in opposition to Defendants' position that the three-year limitations period prevents Plaintiff from seeking relief for second-hand smoke exposure occurring before April 1, 2008.  According to Plaintiff, Defendants waived their statute of limitations defense because they failed to plead it in their responsive pleadings.  However, Plaintiff is wrong; Defendants explicitly pled a statute of limitations defense in their waiver of answer.  *See* Waiver of Answer at 4 (ECF No. 60 Page ID 533) ("Plaintiff's claims may be barred by the applicable statute of limitations.").

Because Defendants Warren, Corrigan, and Topham were all MDOC employees at TCF during the relevant time period, they were not responsible for

_____

Smoke," *see* Am. Compl. ¶¶ 39-46 (ECF No. 27 Page ID 191-193), Plaintiff discusses only his exposure to smoke at MRF.

16

the conditions at MRF. Thus, the Court will grant summary judgment in favor of these three Defendants with regard to Plaintiff's deliberate indifference claim.

This leaves only a deliberate indifference claim against Defendants Wolfenbarger and Scott, the warden and assistant deputy warden at MRF during the time Plaintiff was housed there. As Magistrate Judges Randon and Hluchaniuk noted in their respective R&Rs, deliberate indifference claims under the Eighth Amendment must satisfy both an objective element and a subjective element. "In order to meet the objective factor . . . [a prisoner] must show that his exposure to [second-hand smoke] went beyond 'mere discomfort or inconvenience' to the level of being a 'serious health threat.'" *Henderson v. Martin*, 73 F. App'x 115, 118 (6th Cir. 2003) (quoting *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992)). Magistrate Judge Randon previously concluded that Plaintiff satisfied his burden on the objective element:

> Plaintiff presents a Special Accommodation form from the MDOC-Bureau of Health Care that indicates Plaintiff should have smoke-free housing. Despite this accommodation, Plaintiff alleges he was not provided smoke-free housing. In addition, Plaintiff presents his medical records from a chest X-ray that was performed on June 26, 2001 (before Plaintiff was committed to the MDOC); there was no active pulmonary disease. A second chest X-ray performed on April 26, 2002 showed no active pulmonary disease.
>
> On May 11, 2004 (after Plaintiff was committed to the MDOC), he was diagnosed with Asthma, and his onset date was April 1, 2003. Plaintiff also had respiratory disease. On November 4, 2009, Plaintiff was diagnosed with chronic obstructive pulmonary disease. Asthma is considered a serious medical condition, *see Reilly v. Grayson*, 310

17

> F.3d 519, 520-21 (6th Cir. 2002), and this Magistrate Judge finds
> Plaintiff presented sufficient evidence to meet the objective prong of
> his Eighth Amendment claim.  *See Talal v. White*, 403 F.3d 423, 427
> (6th Cir. 2005) (inmate alleged he was subjected to excessive levels of
> smoke and the ventilation system re-circulates smoke-filled air, he
> provided medical documentation that he is allergic to tobacco smoke
> and the smoke causes sinus problems and dizziness, and medical staff
> recommended that the inmate be placed in a non-smoking unit.  This
> was sufficient to satisfy the objective prong of the deliberate
> indifference test).

Aug. 28, 2012 R&R at 19 (ECF No. 40 Page ID 420).  Notably, Defendants did not

object to Magistrate Judge Randon's recommended ruling on this issue and the

Court subsequently adopted that ruling in an Opinion and Order issued on

November 19, 2012.  Nevertheless, in the presently-pending summary judgment

motion, Defendants argue that Plaintiff cannot satisfy his burden on the objective

element of the deliberate indifference framework.  In his R&R, Magistrate Judge

Hluchaniuk held that the law of the case doctrine prevents the Court from

revisiting the matter.  July 28, 2014 R&R at 17-18 (ECF No. 90 Page ID 967-968).

Defendants have not objected to this ruling and the Court agrees with it.  Thus, the

Court will not revisit its prior ruling on the objective element of the deliberate

indifference framework.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466,

472 (1985) ("It does not appear that Congress intended to require district court

review of a magistrate's factual or legal conclusions, under a *de novo* or any other

standard, when neither party objects to those findings.").

18

"To establish the subjective component [of the deliberate indifference framework], the plaintiff must establish that 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Cardinal v. Metrish*, 564 F.3d 794, 802 (6th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994)).

In his R&R of August 28, 2012, Magistrate Judge Randon noted evidence in the record indicating that several of the Defendants in this case were personally aware of the impact that tobacco smoke has on Plaintiff's health,[7] along with evidence that tobacco continued to be used regularly by MDOC prisoners even after MDOC became "tobacco-free" beginning in February 2009.[8]  In light of that evidence, Magistrate Judge Randon determined that

> Plaintiff should be entitled to discovery to determine: (1) whether prisoners purchased tobacco products after the MDOC was tobacco free; (2) whether prisoners and/or officers smoked in no-smoking

---

[7] Discovery has revealed that Defendant Wolfenbarger was, in fact, personally aware of Plaintiff's medical condition and, specifically, his sensitivity to cigarette smoke.  In response to an interrogatory, he attested that he was "aware of Plaintiff's allergies and understood the severity of the circumstances."  Interrog. 19 (ECF No. 83-6 Page ID 866).

[8] According to Defendant Warren's response to an interrogatory, MDOC has been "tobacco-free" since February 2009, "meaning that tobacco items cannot be purchased or used on grounds by staff, prisoners, or visitors."  Interrog. 10 (ECF No. 83-7 Page ID 876).

areas before the smoking ban; and (3) how prisoners who were caught violating the no-smoking rules were disciplined (e.g., how many misconduct tickets were issued, were those prisoners removed from non-smoking areas, and were grievances responded to).

Aug. 28, 2012 R&R at 20-21 (ECF No. 40 Page ID 421-422).

In their present summary judgment motion, filed after the close of discovery, Defendants argue that Plaintiff cannot show that they disregarded a significant risk to Plaintiff's health in light of the smoking ban that became effective in February 2009 and evidence submitted by Defendants indicating that they enforced the ban to the best of their ability. Magistrate Judge Hluchaniuk did not explicitly address this argument; rather, he concluded that Plaintiff's claim was based entirely on Defendants' alleged failure to enforce the smoking ban and that, as this Court previously noted, liability will not lie absent active unconstitutional behavior.

The Court disagrees with Defendants that they are entitled to summary judgment on Plaintiff's deliberate indifference claim. In so arguing, Defendants rely on evidence indicating that they implemented a smoking ban and made a good faith effort to enforce it. *See Farmer*, 511 U.S. at 844, 114 S. Ct. at 1982-1983 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk."). However, Plaintiff was transferred to MRF at the beginning of 2008 and the smoking ban did not take effect until February 2009. Therefore, the smoking ban was not in effect for the first year that Plaintiff was housed at MRF. Taking the

20

facts in the light most favorable to Plaintiff, the non-moving party, a reasonable jury could conclude that Defendants did not respond reasonably to the risks posed to Plaintiff's health by second-hand smoke by waiting an entire year to enact the smoking ban while allowing Plaintiff to be exposed to second-hand smoke in the meantime.  For this reason, the Court rejects Defendants' reliance on the smoking ban to show a reasonable response.

In addition, although Defendants have produced evidence indicating they made good faith attempts to enforce the ban, the record also contains evidence on which a reasonable jury could rely to reach the opposite conclusion.  For example, Plaintiff submitted the affidavit of Galen Austin Bellman, an MDOC prisoner who attested that he has personally witnessed prisoners "freely smok[ing] in spite of" the MDOC's tobacco ban.  Bellman Aff. ¶¶ 2, 6 (ECF No. 36-1 Page ID 342-343).  Plaintiff also submitted the affidavit of John Edwards Knowls, another MDOC prisoner who attested that prisoners "freely smoke" despite the ban, that "the officers were well aware" of this, and that "the smell was very strong."  Knowls Aff. ¶ 3 (ECF No. 36-1 Page ID 344).  Lastly, Plaintiff himself attested that "tobacco continues to be smuggled into the prison facilities" despite the ban.  Pl. Aff. ¶ 18 (ECF No. 36-1 Page ID 368).  Therefore, even if enactment of the smoking ban together with good faith enforcement were deemed to be reasonable

responses to the risk posed to Plaintiff by second-hand smoke, there is a factual dispute regarding the degree to which the ban was enforced.

The Court also notes evidence in the record on which a reasonable jury could rely to conclude that second-hand tobacco smoke caused Plaintiff to suffer various symptoms, including eye irritation, running nose, coughing, and chest pain. For example, Howard Jay Kaplan, an MDOC prisoner, attested that he "personally witnessed how allergic [Plaintiff] was to tobacco-smoke" inasmuch as Plaintiff's eyes would become irritated and Plaintiff would "constantly" cough. Kaplan Aff. ¶¶ 3, 5 (ECF No. 36-1 Page ID 334). Similarly, Bellman attested that he witnessed Plaintiff's "asthma getting worse as a result of the unwilling exposure to 'ETS,'" explaining that he observed Plaintiff's "irritated eyes, runny nose, and chest pains." Bellman Aff. ¶ 5 (ECF No. 36-1 Page ID 342). These observations are consistent with case law acknowledging that exposure to second-hand smoke aggravates chronic asthma. *See Powers v. Snyder*, 484 F.3d 929, 932 (7th Cir. 2007) ("A prison is not required to provide a completely smoke-free environment, except for prisoners who have asthma or some other serious respiratory condition that even a low level of ambient smoke would aggravate."); *Hicks v. Corrs. Corp. of Am.*, No. CV08-0687-A, 2009 WL 2969768, at *9 (W.D. La. Sept. 11, 2009) (unpublished) ("[S]econd-hand smoke is an asthma trigger."). Moreover, the evidence indicates – and Defendants do not dispute – that Plaintiff suffered a pulmonary embolism in

22

November 2009, resulting in hospitalization for nine or ten days, and was diagnosed with chronic lung disease. Pl. Aff. ¶ 8 (ECF No. 36-1 Page ID 366); D. Vartinelli Aff. ¶¶ 2, 11-12 (ECF No. 36-1 Page ID 362-364).

Finally, the Court rejects Defendants' argument that they are entitled to qualified immunity on Plaintiff's deliberate indifference claim. Taking the evidence in the light most favorable to Plaintiff, Defendants Wolfenbarger and Scott allowed Plaintiff, a prisoner with chronic asthma, to be exposed to second-hand smoke for not less than one year, knowing of Plaintiff's conditions and the danger that second-hand smoke could cause. Under such circumstances, Defendants are not entitled to qualified immunity. *See Atkinson v. Taylor*, 316 F.3d 257, 268-269 (3d Cir. 2003) (prison officials not qualifiedly immune from diabetic inmate's deliberate indifference claim based on second-hand smoke exposure where prison officials housed inmate for over seven months with constant smokers).

## III. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART** as follows: **DENIED** as to Plaintiff's First Amendment claim under § 1983 against Defendants Haywood, Bates, and McManus; **GRANTED** as to Plaintiff's 2008 retaliatory transfer claim against Defendants Warren and Corrigan; **GRANTED** as to Plaintiff's 2010

23

retaliatory transfer claim against Defendants Warren, Corrigan, and Topham;
**GRANTED** as to Plaintiff's Eighth Amendment deliberate indifference claim
against Defendants Warren, Corrigan, and Topham; **DENIED** as to Plaintiff's
Eighth Amendment deliberate indifference claim against Defendants Wolfenbarger
and Scott.   The case shall proceed only on Plaintiff's First Amendment claim
against Defendants Haywood, Bates, and McManus, and on Plaintiff's Eighth
Amendment claim against Defendants Wolfenbarger and Scott.

     **SO ORDERED**.

Dated: September 15, 2014        <u>s/PATRICK J. DUGGAN</u>
                      UNITED STATES DISTRICT JUDGE

Copies to:

Mario Bechara Azzi, Esq.
Cori E. Barkman, Esq.
Kevin R. Himebaugh, Esq.
Magistrate Judge Michael Hluchaniuk